**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MARIA J. TORRES,

        Plaintiff,

        Case No. 3:13-cv-1385-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Maria J. Torres ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Initially, Plaintiff's alleged inability to work was listed as being due to "[m]ajor depression"; "chronic anxiety"; Crohn's disease; "suicidal"; and "ASTHMA[.]" Transcript of Administrative Proceedings (Doc. No. 16; "Tr." or "administrative transcript"), filed February 5, 2014, at 63, 70, 92, 208. Later in the administrative proceedings, however, Plaintiff abandoned the reliance on physical impairments and clarified through her representative that she was alleging an inability to work based "strictly" on "psychological" issues. Tr. at 33; see also Tr. at 14.

On May 16, 2012, Plaintiff filed the applications for DIB and SSI, alleging an onset disability date of January 19, 2012. Tr. at 180-86 (DIB), 174-79 (SSI). On July 18, 2012,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 15), filed February 5, 2014; Reference Order (Doc. No. 18), signed February 9, 2014 and entered February 11, 2014.

Plaintiff's applications were denied initially, see Tr. at 61, 108-13 (DIB), 62, 114-20 (SSI), and on November 6, 2012, Plaintiff's applications were denied upon reconsideration, see Tr. at 77, 121-26 (DIB), 78, 127-32 (SSI).

On April 9, 2013, an Administrative Law Judge ("ALJ") held a hearing during which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 28-60. At the time of the hearing, Plaintiff was forty-six (46) years old. Tr. at 35. On May 10, 2013, the ALJ issued a Decision finding Plaintiff not disabled and denying Plaintiff's claims. Tr. at 12-23. Plaintiff then requested review by the Appeals Council, Tr. at 8, and submitted evidence to the Council in the form of a brief authored by her attorney representative, Tr. at 4-5. On September 16, 2013, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On November 8, 2013, Plaintiff commenced this action under 42 U.S.C. § 405(g) and § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal: whether the ALJ "erroneously relied on medical opinions dated without the benefit of knowledge regarding [Plaintiff's] hospital admission in October 2012 and which were admittedly issued with insufficient information"; and whether the ALJ "erroneously relied on sparse records signed by [a] nonacceptable medical source with Global Assessment of Functioning ('GAF') scores as reliable indicators of [Plaintiff's] functioning." Plaintiff's Brief (Doc. No. 22; "Pl.'s Br."), filed May 7, 2014, at 1; see id. at 8, 15. On June 17, 2014, Defendant responded by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 23; "Def.'s Mem."). After a thorough review of the entire

record and consideration of the parties' respective filings, the undersigned finds that the Commissioner's final decision be affirmed for the reasons stated herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 14-22.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since January 19, 2012, the alleged onset date." Tr. at 14 (emphasis and citations omitted).  At step two, the ALJ found Plaintiff "has the following severe impairments: affective disorder and alcohol abuse in remission." Tr. at 14 (emphasis and citations omitted).  At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 15 (emphasis and citations omitted).

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The ALJ determined Plaintiff has the following residual functional capacity ("RFC"):
>
> [Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except that she can never climb ladders, ropes, or scaffolds; she must avoid all exposure to unprotected heights and dangerous machinery; she can have only occasional interaction with the general public and co-workers; and it must be a simple one, two, or three step job with no production assembly line pace.

Tr. at 16 (emphasis omitted). At step four, the ALJ found Plaintiff "is unable to perform any past relevant work" as a "Medical Secretary," a "Director, Outpatient Services," or a "Child Monitor[.]" Tr. at 21 (some emphasis and citation omitted). At step five, after considering Plaintiff's age ("45 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 21 (emphasis and citations omitted), including "Cleaner, Housekeeper," "Office Helper," and "Photocopying Machine Operator," Tr. at 22. The ALJ concluded that Plaintiff "has not been under a disability . . . from January 19, 2012, through the date of th[e D]ecision." Tr. at 22 (emphasis and citation omitted).

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

As noted above, Plaintiff raises two issues on appeal. The first relates to the opinions of two non-examining state agency psychologists. Within the first argument, Plaintiff advances a number of reasons why she thinks the ALJ's reliance on those opinions was in error, including that later medical evidence allegedly refutes the opinions. The second issue relates to the ALJ's discussion of certain GAF scores that were assigned by the treating nurse practitioner after the non-examining opinions were authored. The issues are related and are addressed together.

### A. Summary of Opinions at Issue

The opinions at issue were authored by Mercedes DeCubas, Ph.D., on July 16, 2012, Tr. at 65-67, 72-74, and by Keith Bauer, Ph.D., on October 30, 2012, Tr. at 83-85, 87-89, 97-98, 100-02.

Dr. DeCubas reviewed the file, including the medical evidence available at the time he reviewed it (two days prior to the initial denial of Plaintiff's applications), and he

-5-

summarized the findings and observations contained in the medical evidence. Tr. at 65. Dr. DeCubas noted that both the "[e]xaminer and [the] attorney rep[resentative] ha[d] made multiple attempts to obtain functional information from [Plaintiff] with no success." Tr. at 65. Because "[c]urrent functi[o]nal information [was] needed to adjudicate th[e] claim," Dr. DeCubas found that the "case [was] insufficient" to opine on the four broad areas of mental functioning. Tr. at 65-66.

During the reconsideration phase, Dr. Bauer reviewed the file, including the medical evidence available at the time, summarized the evidence of record, and opined on Plaintiff's mental functional limitations. Tr. at 83-85, 87-89. The first part of the summary is virtually identical to the summary provided by Dr. DeCubas. Compare Tr. at 65, with Tr. at 84. Just as Dr. DeCubas noted after summarizing the medical evidence, Dr. Bauer noted that the "[e]xaminer and attorney rep[resentative] ha[d] made multiple attempts to obtain functional information from [Plaintiff] with no success" and "[c]urrent functi[o]nal information [was] needed to adjudicate th[e] claim." Tr. at 84. Dr. Bauer then proceeded, however, to summarize more medical evidence (apparently submitted after Dr. DeCubas issued his opinion), and he referred to an "adult functional report" that Plaintiff had submitted. Tr. at 84. According to Dr. Bauer, the "[f]unctional evidence is generally consistent with medical evidence with no more than moderate limitations." Tr. at 85. So, given that Dr. Bauer opined regarding the functional evidence that Plaintiff had submitted, it appears that his reference to not having current functional information was in error.

Dr. Bauer assigned a number of mental work-related limitations, including a moderate limitation in maintaining attention and concentration for extended periods; a moderate limitation in the ability to complete a normal workday and workweek without interruptions

-6-

from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; a moderate limitation in the ability to interact appropriately with the general public; a moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and a moderate limitation in the ability to respond appropriately to changes in the work setting. Tr. at 88-89.

## B. Legal Framework

The Regulations establish a "hierarchy" among medical opinions[3] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of [any] treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(e).

---

[3] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

With regard to a treating physician or psychiatrist,[4] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v.

---

[4] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

**C. Analysis**

In terms of the state agency non-examining opinions, the ALJ wrote as follows:

> On July 16, 2012, Mercedes DeCubas, Ph.D., on October 30, 2012, Keith Bauer, Ph.D., and on November 5, 2012, Walter Harris, M.D., consultants for the State agency[,] prepared a Disability Determination Explanation and concluded that affective disorder was a severe impairment. The opinion of Drs. DeCubas, Bauer, and Harris is given partial weight; I agree with the finding that affective disorder is a severe impairment, however, I did not find any severe physical impairments.[5]  I agree with the "B" criteria listings provided by Dr. Bauer.[6]

---

[5]  As stated earlier, Plaintiff abandoned the original claim that her disability was in part based upon physical limitations.

[6]  The "B" criteria to which the ALJ referred has to do with rating the degree of mental functioning limitation. The process is as follows. In evaluating a claimant's mental condition, the Regulations direct the use of the psychiatric review technique. See 20 C.F.R. §§ 404.1520a and 416.920a. The psychiatric review technique is embodied in the psychiatric review technique form ("PRTF") and is further described in the preface to section 12.00 of the listing of impairments. See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. In the first step of the psychiatric review technique, it is determined whether a claimant has a medically determinable mental impairment using the criteria in "paragraph A" of the listings. 20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. Next, the degree of functional limitation relating to such impairment is ascertained. 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). In determining the degree of functional limitation resulting from a mental impairment, four "broad functional areas" in "paragraph B" of the listings are rated: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. The first three broad functional areas are rated using a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. If the criteria under paragraph B do not establish that the claimant is disabled, depending on the type of mental disorder, the criteria under "paragraph C" are considered. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.

Next, if paragraph C does not establish that the claimant is disabled, the severity of the mental impairment is determined based on the degree of limitations in the four broad functional areas. See 20 C.F.R. §§ 404.1520a(d) and 416.920a(d); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. If the claimant is determined to have a severe mental impairment that does not meet or medically equal any of the impairments listed, then the claimant's RFC is assessed. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. The ratings of the claimant's limitations in the four broad functional areas pursuant to the psychiatric review technique "are not an RFC assessment but are used to rate the severity of mental impairments at steps [two] and [three] of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. "The mental RFC assessment used at steps [four] and [five] of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the [listings]." Id.

When making the more detailed assessment and itemizing the claimant's various functions in assessing RFC at steps four and five of the sequential evaluation process, "[n]onexertional capacity[] must be expressed in terms of work-related functions." Id. at *6. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to

(continued...)

Tr. at 19 (citations omitted).

According to Plaintiff, because the non-examining psychologists did not have sufficient information to render opinions at the time they were authored, combined with the "clear decline" in her mental health post-dating the opinions, the ALJ's reliance on them was improper. Pl.'s Br. at 8-9; see id. at 10-15. Defendant responds by arguing that "the ALJ properly evaluated the opinion evidence from the state agency physicians," and "the ALJ did not rely on the state agency physician opinions to the exclusion of the remainder of the record." Def.'s Mem. at 5. The undersigned finds that the ALJ appropriately relied on the opinions, along with the remainder of the evidence in the file, in determining Plaintiff's RFC.

Plaintiff's contention that Dr. DeCubas and Dr. Bauer did not have sufficient information regarding Plaintiff's functional limitations to render opinions may be true only with respect to Dr. DeCubas; the sole reason he did not have sufficient functional information at the time his opinion was authored, however, was because Plaintiff failed to provide it even after she was asked "multiple" times. Tr. at 65. As to Dr. Bauer, it appears he had sufficient information regarding Plaintiff's functional limitations despite his inaccurate statement to the contrary. Indeed, he both referred to the functional report Plaintiff submitted and he opined regarding specific functional limitations. See Tr. at 84-87. Thus, at least Dr. Bauer, upon whose assigned functional limitations the ALJ relied, did have sufficient information to form an opinion.

---

⁶(...continued)
supervision, co-workers and work situations; and deal with changes in a routine work setting." Id.; see also 20 C.F.R. §§ 404.1545(c) and 416.945(c); Chaney-Everett v. Astrue, 839 F. Supp. 2d 1291, 1307 n. 12 (S.D. Fla. 2012) (citation omitted). The assessment of functional limitations resulting from mental impairments "is a complex and highly individualized process that requires [consideration of] multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. §§ 404.1520a(c)(1) and 416.920a(c)(1).

Nor does the undersigned find persuasive Plaintiff's contention that the ALJ's reliance on these opinions was improper in light of the treatment notes and evidence that post-date the opinions. The ALJ's Decision makes clear that she considered all of the psychological treatment evidence, even that which was submitted after the opinions, in determining Plaintiff's RFC. See Tr. at 17-20. Plaintiff argues the later evidence shows a decline in her condition, mainly because of a psychiatric hospitalization in October 2012. Pl.'s Br. at 12-13; see Tr. at 326-47. While the administrative transcript reflects that Plaintiff was indeed hospitalized in October 2012 for psychiatric treatment, including suicidal ideation, the last treatment note in the record dated January 15, 2013 documents a "good" response to medication, "no" medication side effects, and Plaintiff "feel[ing] a little manic[.]" Tr. at 349.

Plaintiff contends the treatment notes (especially this one) should carry little weight, in part because they were prepared by a nurse practitioner, who is not an acceptable medical source under the Regulations. See Pl.'s Br. at 13; see 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d) (listing acceptable medical sources and stating "nurse-practitioners" are "other . . . medical sources" ). Even though a nurse practitioner is not an acceptable medical source, an ALJ must still take into account all of the evidence, including the evidence authored by non-acceptable sources. See Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *1 (M.D. Fla. Apr. 17, 2008) (unpublished) (stating that opinions of other medical sources "constitute 'evidence to be considered on the record as a whole'") (quoting Gramlisch v. Barnhart, 464 F. Supp. 2d 876, 881 (E.D. Mo. 2006)); see also SSR 06-3p, 2006 WL 2329939, at *3 (recognizing opinions from sources "who are not technically deemed acceptable medical sources . . . are important and should be evaluated on key issues . . .") (internal quotations omitted); see also Reliford v. Barnhart, 444 F. Supp. 2d

1182, 1188 (N.D. Ala. 2006) (finding it "improper and unreasonable" for an ALJ to completely reject the opinion of a treating physical therapist because the therapist was an "other" source). The ALJ recognized the law in this regard, stating as follows:

> Although an A[dvanced ]R[egistered ]N[urse ]P[ractitioner] is not an acceptable medical source for purposes of establishing whether an individual has an impairment under the [R]egulations, . . . the [R]egulations do allow her to provide insight into the severity of an impairment and how it affects the individual's ability to function. I find that the assessment of [Plaintiff] made by [the nurse practitioner] is consistent with the medical evidence of record and ha[ve] considered her opinion accordingly.

Tr. at 19 (citations omitted). The ALJ did not err in taking into account and relying upon the notes and assessments of the treating nurse practitioner.

Plaintiff finally contends the ALJ erred in partially relying on the GAF scores assigned by treating sources (mainly the nurse practitioner). Pl.'s Br. at 15-17. It is true that "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and [Supplemental Security Income] disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (unpublished) (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01, 2000 WL 1173632 (Aug. 21, 2000)); see also Wilson v. Astrue, 653 F. Supp. 2d 1282, 1293 (M.D. Fla. 2009). As a result of the Commissioner's refusal to endorse the GAF scale, and due to the subjectivity of the clinician's determination involved in assigning the GAF score, courts appropriately assign GAF scores limited weight in reviewing an ALJ's determination regarding a plaintiff's functional capacity. Indeed, as this Court previously noted, "Reliance upon a GAF score is of questionable value in determining an individual's

-13-

mental functional capacity." Gasaway v. Astrue, No. 8:06-cv-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008) (unpublished) (citing DeBoard v. Comm'r Soc. Sec., 211 F. App'x 411, 415-16 (6th Cir. 2006)).  Here, the ALJ recognized that GAF scores are "only one tool used by clinicians to develop the clinical picture," before she found that "the consistency of the GAF scores assigned to [Plaintiff] support the conclusion that her mental symptoms do not rise to a disabling level."  Tr. at 18.  The ALJ did not rely solely on the GAF scores in making this finding; among others, the ALJ also made the explicit findings that "[t]he totality of the evidence contradicts [Plaintiff's] statement that she is disabled and unable to work"[7] and that Plaintiff "has received very conservative psychological treatment for bipolar disorder."  Tr. at 19.  Considering all of the ALJ's other observations and findings, the ALJ did not err in this regard.  See Tr. at 17-20.

Given that it is clear from the ALJ's detailed Decision that she was aware of and took into account the later evidence, and given that the record does not document a strong worsening of Plaintiff's condition after the opinions were rendered, the undersigned finds the ALJ did not err in relying on the opinions and the other evidence of record in determining Plaintiff's RFC.[8]

---

[7] This finding was part of the ALJ's overall credibility determination. Plaintiff quarrels to a degree with the ALJ's partial reliance on her drug and alcohol use in discrediting her. See Pl.'s Br. at 14. Plaintiff characterizes the reliance as an attempt to convert this case into a "'DA&A' case . . . without any legal basis for doing so." Id. The ALJ did no such thing; she simply discussed the inconsistencies in reports of drug and alcohol use, among other inconsistencies, in discrediting Plaintiff's testimony. See Tr. at 19.

[8] Plaintiff argues the ALJ should have sought a consultative examination or a "detailed assessment from the treating sources." Pl.'s Br. at 15. This is tantamount to arguing that the ALJ abrogated her duty to fully and fairly develop the record. "It is well-established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). "Nevertheless, the claimant bears the burden of proving that he [or she] is

(continued...)

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3) **AFFIRMING** the Commissioner's final decision.

2. The Clerk of Court is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 11, 2015.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
copies:
counsel of record

---

[8](...continued)
disabled, and, consequently, he [or she] is responsible for producing evidence in support of his [or her] claim." Ellison, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a), (c)). While "[t]he [ALJ] has a duty to develop the record where appropriate[,]" the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007) (citing Doughty, 245 F.3d at 1281). Here, the ALJ had before her sufficient evidence to make an informed decision.